UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ZANE BALSAM,

        Petitioner,

v.                                                Case No.:    5:24-cv-360-SPC-PRL

WARDEN, COLEMAN - LOW,

        Respondent.
_____/

**OPINION AND ORDER**

      Petitioner Zane Balsam, a federal prisoner at FCC Coleman, seeks a writ of habeas corpus directing the Bureau of Prisons (BOP) to release him immediately to home confinement. Balsam, a 72-year-old Canadian citizen who has been a lawful permanent resident of the United States since 1988, is subject to an immigration detainer. He was transferred to home confinement in December 2024, but a change in BOP policy regarding placement of inmates with immigration detainers resulted in his return to FCC Coleman in February 2025 to complete his sentence, set to expire in May 2026.

      Although courts considering this issue have come to varied results, a review of the relevant statutes and caselaw counsels the Court to determine that the relief Balsam seeks is ultimately a designation-of-confinement matter

that is not redressable via a habeas corpus action. Accordingly, Balsam's second amended petition is dismissed.

## I.  Background

Balsam serves a 360-month sentence for money laundering offenses imposed in the United States District Court for the Southern District of Florida. *See United States v. Balsam*, No. 9:99-cr-8125, Doc. 2043 (S.D. Fla. April 25, 2002). His projected release date is May 21, 2026.[1] Balsam is subject to an immigration detainer lodged against him by the Department of Homeland Security/Immigration and Customs Enforcement office on January 23, 2008.[2] (Doc. 33-1 at 4, 18).

Balsam, proceeding pro se, initiated this action in July 2024, petitioning for declaratory judgment and a writ of mandamus directing the BOP to effectuate his immediate transfer to prerelease custody. (Doc. 1). He later filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241

---

[1] *See* Inmate Locator, Federal Bureau of Prisons, available at https://www.bop.gov/ inmateloc/ (last visited Sept. 17, 2025).

[2] "A detainer serves to advise another law enforcement agency that the Department [of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." *Id.*

requesting he be transferred to prerelease custody. (Doc. 7). The BOP responded, asserting that Balsam was eligible to have First Step Act time credits applied to his sentence and his estimated date of release was updated to reflect his eligibility, making his claim moot, and that the petition should otherwise be denied because the Court does not have the authority to grant the relief Balsam requested. (Doc. 11). Balsam replied (Doc. 12) and supplemented the record (Docs. 15–18).

Balsam was transferred to home confinement in December 2024. (Doc. 20). However, he was removed from home confinement and returned to FCC Coleman in February 2025, after the BOP updated its policy regarding inmates with immigration detainers. (Doc. 31 at 12–13). Before the Court adjudicated Balsam's amended petition, counsel appeared on his behalf. (Docs. 23, 25). Balsam, through counsel, filed a second amended petition for a writ of habeas corpus raising three grounds: (1) the revocation of Balsam's release to home confinement violates 18 U.S.C. § 3632(d)(4), accompanying regulations, and BOP Program Statements; (2) the revocation of Balsam's release to home confinement violated his due process rights because he was not given any notice, an opportunity to be heard, or a hearing; and (3) the BOP should be estopped from its new statutory interpretation that resulted in Balsam's removal from home confinement. (Doc. 31). The BOP responded in opposition, asserting that the petition should be dismissed due to Balsam's

failure to exhaust administrative remedies or, alternatively, denied because Balsam lacks a liberty interest in his place of confinement and the Court is unable to provide the relief Balsam requests. (Doc. 33). Balsam replied (Doc. 34) and filed a notice of supplemental authority (Doc. 35).

## II.    Legal Standard

### A.    Habeas Corpus

The fundamental purpose of a habeas proceeding is to allow a person in custody to attack the legality of that custody, and the "traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). For example, when a prisoner makes a claim that, if successful, would invalidate his conviction or shorten his sentence, the claim must be brought as a habeas petition, not as a civil rights claim. *See Edwards v. Balisok*, 520 U.S. 641, 645–46 (1997); *Heck v. Humphrey*, 512 U.S. 477 (1994).

Conversely, a place-of-confinement claim is generally not cognizable in a habeas proceeding. Prerelease custody determinations are placement decisions committed to the discretion of the BOP. *See* 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621."); 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). "The

decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Congress delegated to the BOP the authority to designate the place of a prisoner's custody and enumerated five factors to consider. 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment[.])".[3]

### B. The Second Chance Act (SCA) and the First Step Act (FSA)

The SCA authorizes the BOP to place a prisoner in a community correctional facility (also known as a Residential Reentry Center, RRC, or halfway house) or in home confinement to prepare for reentry into society prior to the expiration of the prisoner's term of custody. *See* Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657, § 251 (amending 18 U.S.C. § 3624(c)). Generally, a prisoner is eligible to spend up to 12 months in prerelease custody at an RRC prior to the end of sentence. 18 U.S.C. § 3624(c)(1). A prisoner is also eligible for a period of home confinement not to exceed "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).

---

[3] Those factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. § 3621(b).

The FSA created a risk and needs assessment system whereby prisoners could earn incentives, including time credits to be applied toward placement in prerelease custody and toward early placement on supervised release, for successful participation in evidence-based recidivism reduction programming or productive activities. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194, § 101; *see also* 18 U.S.C. §§ 3624(g), 3632(d)(4). To this end, Congress expanded the time frame for release and prerelease custody by exempting FSA time credits from the time limits in subsections (b) and (c) of § 3624. 18 U.S.C. § 3624(g)(10). Subsection (b) limited early release to no more than "54 days for each year of the prisoner's sentence imposed by the court." 18 U.S.C. § 3624(b). The FSA expanded on this by authorizing an additional 12 months of time credits to be applied toward early release from prison toward a term of supervised release. 18 U.S.C. § 3624(g)(3). Subsection (c) limited placement in home confinement to 6 months and limited placement in an RRC to 12 months. 18 U.S.C. § 3624(c)(1) and (2). The FSA expanded on this by directing time credits to "be applied toward time in prerelease custody" without regard to the limit. 18 U.S.C. §§ 3624(g)(10), 3632(d)(4)(C). "But [§ 3624] contains no mandatory language that requires the BOP to allow a prisoner to serve any time whatsoever in confinement in a community corrections facility or on home confinement." *Ramirez v. Warden, FCI La Tuna Camp*, No. EP-24-CV-255-DCG, 2024 WL 4683318, at *4 (W.D.

Tex. Nov. 5, 2024). Finally, 34 U.S.C. § 60541(a)(2) grants the BOP the discretion to offer a prisoner "the maximum allowable period in a community confinement facility" and other "such other incentives" as are considered appropriate—but it does not permit the BOP to reduce a prisoner's term of imprisonment.

## C. Exhaustion of Administrative Remedies

Although exhaustion of administrative remedies is not a jurisdictional requirement in a § 2241 proceeding, "that does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). A court, however, "may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question." *Id.*

## III. Discussion

The substantive issues[4] presented in this case are "murky" and "hazy." *See Woolsey v. Warden*, No. 2:25-cv-137, 2025 WL 2598794, at *7 (M.D. Ala. Sept. 8, 2025) ("Determining what constitutes a challenge to the execution of a sentence—when its duration remains unchanged—is where things get murky."); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242 (3d Cir. 2005)

---

[4] The Court determines that skipping over the exhaustion issue is appropriate. *Santiago-Lugo*, 785 F.3d at 475.

("Still, the precise meaning of 'execution of the sentence' is hazy."). Although Balsam has presented cases from other courts that have determined it was within their authority to direct the BOP to transfer a prisoner to home confinement, the Court finds that his claims present a conditions-of-confinement issue not cognizable in a habeas proceeding.[5]

Courts generally do not have the authority to direct the BOP to place a prisoner in prerelease custody. *See Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023) (district court lacked the authority to order the BOP to place prisoner in home confinement); *Touizier v. U.S. Att'y Gen.*, No. 21-10761, 2021 WL 3829618, at *2 (11th Cir. Aug. 27, 2021) (same).[6] "Congress surely knew when it drafted the FSA that it had long ago granted the BOP broad discretion in designating where convicted individuals will serve out their sentences." *Crowe v. Fed. Bureau of*

---

[5] *See, e.g., Williams v. Warden, FCI Berlin*, --- F. Supp. 3d ----, 2025 WL 2207024, at *1 (D.N.H. Aug. 4, 2025) (ordering BOP to return inmate with immigration detainer to home confinement); *Martin v. Phillips*, No. 2:25-cv-00687, 2025 WL 732829, at *7 (E.D. Cal. Mar. 7, 2025) (granting motion for temporary restraining order and ordering BOP to transfer inmate with unresolved immigration detainer back into prerelease custody).

[6] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007); *see also* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

*Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *23 (D.D.C. June 9, 2025) (citation omitted).

The *Woolsey* court recently stated that there does not appear to be "any on-point binding precedent supporting the argument that § 2241 does not confer jurisdiction for relief seeking placement in prerelease custody under the FSA." 2025 WL 2598794, at *8. "It does not appear that the Eleventh Circuit has specifically addressed what statutory vehicle should be used by a federal prisoner to challenge where a federal sentence should be served for purposes of prerelease custody under the FSA." *Id.* It noted that the Fifth Circuit and courts in the Eighth Circuit have found there is no jurisdiction under § 2241 for claims seeking application of FSA credits to prerelease custody. *Id.* (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) and *Reaves v. Garrett*, No. 2:24-cv-177, 2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025), *report and recommendation adopted*, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025). The *Woolsey* court then noted that at least three circuits—the First, Second, and Third—have held that habeas jurisdiction is proper under § 2241 for pre-FSA claims challenging denials of transfers to community confinement centers." *Id.* at *9 (citing *Francis v. Maloney*, 798 F.3d 33, 36 (1st Cir. 2015); *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); and *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005). The *Woolsey* court ultimately found the

latter authority more persuasive, noting that placement in a CCC is unique compared to general prison placement. *Id.* at *10.

Having reviewed the varied authority, however, the Court finds the opinions of the Fifth and Eighth Circuit courts more persuasive. If the Court were to grant Balsam his requested relief, he will not be released from custody sooner. Instead, he would simply serve the remainder of his term of imprisonment somewhere different—in home confinement, which is a form of prerelease custody. "Prerelease custody is part of a term of imprisonment." *Wessels v. Houden*, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (citing § 3624(c) and collecting cases). Any relief the Court could grant would not secure release from illegal custody or shorten his term of imprisonment.[7]

The Court does not find the Eleventh Circuit's unpublished opinion in *United States v. Saldana* to be persuasive. 273 F. App'x 845 (11th Cir. 2008). *Saldana* involved prisoners requesting the district court lift a separation order so that they could be confined in the same prison. The Eleventh Circuit stated that it "has considered an attack by a federal prisoner on his place of confinement to be relief sought pursuant to 28 U.S.C. § 2241." *Id.* (citing *Ledesma v. United States*, 445 F.2d 1323, 1323–24 (5th Cir. 1971)). However,

---

[7] Balsam has been afforded the application of 365 days of earned time credits to early transfer to supervised release under 18 U.S.C. § 3624(g)(3)— the maximum permissible amount. (Doc. 33 at 2 n.1).

the Eleventh Circuit ultimately held that the district court lacked jurisdiction to consider their petitions because they were not confined in that district. *Id.* at *847. More persuasive is the more recent authority of *Sills* and *Touzier* affirming district courts' determinations that they lacked authority to order inmates' placement in home confinement. *See Touzier*, 2021 WL 3829618, at *2 ("The main question we must determine in this appeal is whether the district court has the authority to order the BOP to return Touizer to home confinement. We hold that it does not."); *Sills*, 2023 WL 1775725, at *3 ("We conclude that the district court properly denied Sills's § 2241 petition. As Sills concedes, the court lacked the authority to order his placement in home confinement.").

Furthermore, there is generally no protected liberty interest in prerelease custody. *See Sills*, 2023 WL 1775725, at *3 (acknowledging Sills had no protected liberty interest in home confinement and thus was "not entitled to due-process-protections in relation to that decision."). Thus, to the extent Balsam raises due process claims regarding his return to FCC Coleman after being released to home confinement, his claim fails. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another."). Nor does the Due Process Clause give Balsam a right to transfer to a particular institution of his choosing. *See id.*

The Court also rejects Balsam's contention that his due process rights were violated when the BOP "re-detained" him to return to FCC Coleman. (Doc. 34 at 6). When Balsam was placed in home confinement, he remained in BOP custody. "Just as the BOP has the authority to release prisoners to home confinement, so too does it have the power to revoke that release." *Touizer*, 2021 WL 3829618, at *2. Although Balsam likens this treatment to pre-parole programs, the Court disagrees. *See Sills*, 2023 WL 1775725, at *4 n.3 ("Notably, § 3625 expressly exempts the BOP's prisoner-placement and prerelease-custody decisions, including home confinement, from judicial review under the Administrative Procedures Act (APA), *see* 18 U.S.C. § 3625, while the federal parole board appears to be subject to the APA at least in part, *cf. Brown v. Lundgren*, 528 F.2d 1050, 1053–54 (5th Cir. 1976) (discussing the APA in relation to the federal parole board).").

Finally, the Court agrees with the BOP that Balsam fails to establish that estoppel is warranted in this case and that attorneys' fees under the Equal Access to Justice Act are inappropriate. (Doc. 33 at 19–20 n.5). Balsam responded to neither of these contentions in his reply. (Doc. 34). Any arguments raised by Balsam not discussed herein are deemed meritless.

## IV. Conclusion

Despite the murky nature of the claims presented, the Court determines that Balsam's claims ultimately relate to the conditions of his confinement, not

the execution of his sentence, and are therefore not redressable through a habeas proceeding.

Accordingly, it is now

**ORDERED:**

1. Balsam's second amended petition (Doc. 31) is **DISMISSED.**

2. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions and deadlines, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on September 19, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:   OCAP-2
Copies: All Parties of Record